| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Austin P. Nagel, Esq. #118247<br>LAW OFFICES OF AUSTIN P. NAGEL<br>111 Deerwood Rd., Suite 305<br>San Ramon, CA 94583<br>(925) 855-8080 (phone)<br>(925) 855-8090 (fax)<br>melissa@apnagellaw.com<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

| In re:<br><br>THERESA GREAVES | CASE NO.: 6:16-bk-18027-SY<br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| Debtor(s). | DATE: 11/30/2016<br>TIME: 9:30 a.m.<br>COURTROOM: 302 |

**Movant:** WELLS FARGO BANK, N.A.

1. **Hearing Location**:
   - ☐ 255 East Temple Street, Los Angeles, CA 90012
   - ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367
   - ☒ 3420 Twelfth Street, Riverside, CA 92501
   - ☐ 411 West Fourth Street, Santa Ana, CA 92701
   - ☐ 1415 State Street, Santa Barbara, CA 93101

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒  This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐  This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a.  ☐  An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b.  ☐  An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c.  ☐  An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  10/27/2016

LAW OFFICES OF AUSTIN P. NAGEL
Printed name of law firm (if applicable)

Austin P. Nagel
Printed name of individual Movant or attorney for Movant

Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                Page 2                        F 4001-1.RFS.RP.MOTION

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*: 29638 Del Rey Rd.
   *Unit/suite number*:
   *City, state, zip code*: Temecula, CA 92591

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit _A___):

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary   bankruptcy petition under chapter   ☒ 7  ☐ 11  ☐ 12  ☐ 13 was filed on (*date*) _09/07/2016_ .

   b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13  was entered on (*date*) _____.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☒ Movant's interest in the Property is not adequately protected.

       (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

       (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

       (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☐ The bankruptcy case was filed in bad faith.

       (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

       (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

       (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

       (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

       (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

       (F) ☐ Other (*see attached continuation page*).

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                              Page 3                              **F 4001-1.RFS.RP.MOTION**

(3) ☐ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
        ☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☒ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____,
    which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other *(specify)*:

6. **Evidence in Support of Motion:  (De*claration(s) MUST be signed under penalty of perjury and attached to this motion*)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

d. ☐ Other:

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 4                          **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☒ 11 U.S.C. § 362(d)(1)   ☐ 11 U.S.C. § 362(d)(2)   ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement. Any such agreement shall be nonrecourse unless stated in a reaffirmation agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or   ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or   ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☐ without further notice, or   ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☒ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date:  10/27/2016

Law Offices of Austin P. Nagel
Printed name of law firm (*if applicable*)

Austin P. Nagel
Printed name of individual Movant or attorney for Movant

_(signature)_
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 5                          F 4001-1.RFS.RP.MOTION

# REAL PROPERTY DECLARATION

I, (print name of Declarant) <u>Cristy Lynn Bidler</u> _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (specify):

    a. ☐ I am the Movant.

    b. ☐ I am employed by Movant as (state title and capacity):

    c. ☒ Other (specify): SEE ATTACHED CONTINUATION SHEET

2. a. ☐ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

    b. ☒ Other (see attached):
        SEE ATTACHED CONTINUATION SHEET

3. The Movant is:

    a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit <u>B</u>.

    b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit <u>C</u>.

    c. ☐ Servicing agent authorized to act on behalf of the:
        ☐ Holder.
        ☐ Beneficiary.

    d. ☐ Other (specify):

4. a. The address of the Property is:

    Street address: 29638 Del Rey Rd.
    Unit/suite no.:
    City, state, zip code: Temecula, CA 92591

    b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
    See Exhibit A

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                Page 6                            F 4001-1.RFS.RP.MOTION

5. Type of property (*check all applicable boxes*):

   a. ☐ Debtor's principal residence    b. ☒ Other residence
   c. ☐ Multi-unit residential    d. ☐ Commercial
   e. ☐ Industrial    f. ☐ Vacant land
   g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

   a. ☐ Sole owner
   b. ☒ Co-owner(s) (*specify*): Debtor, Teri A. Greaves and John C. Greaves, Trustees of the Greaves Family Trust
   dated October 3, 2006
   c. ☐ Lienholder (*specify*):
   d. ☐ Other (*specify*):
   e. ☒ The Debtor ☒ did ☐ did not  list the Property in the Debtor's schedules.
   f. ☐ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☐ trust deed.
   The deed was recorded on (*date*) _____.

7. Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
   that encumbers the Property.

   a. ☒ A true and correct copy of the document as recorded is attached as Exhibit C____.
   b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
   attached as Exhibit B____.
   c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
   trust to Movant is attached as Exhibit _____.

8. Amount of Movant's claim with respect to the Property:

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 444,958.23 |
| b. | Accrued interest: | $ | $ | $ 18,051.50 |
| c. | Late charges | $ | $ | $ 157.64 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 0 |
| e. | Advances (property taxes, insurance): | $ | $ | $ 0 |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[0          ] |
| g. | TOTAL CLAIM as of (*date*): 10/06/2016 | $ | $ | $ 463,167.37 |

   h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
   has occurred*):

   a. Notice of default recorded on (*date*) 05/20/16____ or ☐ none recorded.
   b. Notice of sale recorded on (*date*) _____ or ☒ none recorded.
   c. Foreclosure sale originally scheduled for (*date*) _____ or ☒ none scheduled.
   d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.
   e. Foreclosure sale already held on (*date*) _____ or ☒ none held.
   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*        Page 7        **F 4001-1.RFS.RP.MOTION**

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

   a. Amount of current monthly payment as of the date of this declaration: $ 1,649.50 _____ for the month of September 2016.

   b. Number of payments that have come due and were not made: 10 ___. Total amount: $ 15,783.43 _____

   c. Future payments due by time of anticipated hearing date (*if applicable*):

   An additional payment of $ 1,494.87 (variable) ___ will come due on (*date*) 10/15/2016 , and on the 15th day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $ _____ will be charged to the loan.

   d. The fair market value of the Property is $ 574,612.00 _____ , established by:

   (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.
   (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.
   (3) ☒ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit D .
   (4) ☐ Other (*specify*):

   e. **Calculation of equity/equity cushion in Property:**

   Based upon ☐ a preliminary title report ☒ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Wells Fargo Home Mortgage | $ 232,423.83 | $ |
| 2nd deed of trust: | Wells Fargo Bank, N.A. | $ | $ 463,167.37 |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | Meadow View HOA | $ 675.00 | $ |
| **TOTAL DEBT:** $ 696,266.20 | | | |

   f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit E ____ and consists of:

   (1) ☐ Preliminary title report.
   (2) ☒ Relevant portions of the Debtor's schedules.
   (3) ☐ Other (*specify*):

   g. ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
   I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ -120,979.20 _____ and is 0 _____ % of the fair market value of the Property.

   h. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
   By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ -121,654.20 _____.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 8                                    F 4001-1.RFS.RP.MOTION

i. ☒ Estimated costs of sale: $ 57,461.20 _____ (estimate based upon __10__ % of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☐ *(Chapter 12 and 13 cases only)* Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                     $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                                                 $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:           $[                    ]

   TOTAL POSTPETITION DELINQUENCY:              $

g. Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
$_____     received on (*date*) _____
$_____     received on (*date*) _____
$_____     received on (*date*) _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                      Page 9                            F 4001-1.RFS.RP.MOTION

13. ☐  Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐  The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☒  The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _F_____.

16. ☐  Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

17. ☐  The bankruptcy case was filed in bad faith:

   a.  ☐  Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b.  ☐  Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c.  ☐  The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d.  ☐  Other (*specify*):

18. ☐  The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a.  ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b.  ☐  Multiple bankruptcy cases affecting the Property include:

      1.  Case name: _____
          Chapter: _____    Case number: _____
          Date filed: _____    Date discharged: _____    Date dismissed: _____
          Relief from stay regarding the Property ☐ was ☐ was not  granted.

      2.  Case name: _____
          Chapter: _____    Case number: _____
          Date filed: _____    Date discharged: _____    Date dismissed: _____
          Relief from stay regarding the Property ☐ was ☐ was not  granted.

      3.  Case name: _____
          Chapter: _____    Case number: _____
          Date filed: _____    Date discharged: _____    Date dismissed: _____
          Relief from stay regarding the Property ☐ was ☐ was not  granted.

   ☐  See attached continuation page for information about other bankruptcy cases affecting the Property.

   ☐  See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                          Page 10                          F 4001-1.RFS.RP.MOTION

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/26/16 | Cristy Lynn Bidler - VP Loan Documentation | _Cristy Lynn Bidler_ |
|----------|--------------------------------------------|----------------------|
| Date | Printed name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                          Page 11                          F 4001-1.RFS.RP.MOTION

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

111 Deerwood Rd., Suite 305, San Ramon, CA 94583

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 10/27/2016 __, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Theresa Greaves
30591 McGowan Pass
Murrieta, CA 92563

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/27/2016 | Melissa Alcorn | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**CONTINUATION SHEET**

I, ___Cristy Lynn Bidler___, declare under penalty of perjury as follows:

1.  I am a/an VP Loan Documentation of WELLS FARGO BANK, N.A. ("Wells Fargo")
    and am authorized to sign this declaration on behalf of Wells Fargo. This declaration is
    provided in support of the Motion for Relief from Stay (the "Motion") filed
    contemporaneously herewith.

2.  As part of my job responsibilities for Wells Fargo, I have personal knowledge of and
    am familiar with the types of records maintained by Wells Fargo in connection with the
    account that is the subject of the Motion (the "Account") and the procedures for
    creating those types of records. I have access to and have reviewed the books, records
    and files of Wells Fargo that pertain to the Account and extensions of credit given to the
    Debtor(s) concerning the property securing such Account.

3.  The information in this declaration is taken from Wells Fargo's business records
    regarding the Account. The records are: (a) made at or near the time of the occurrence
    of the matters recorded by persons with personal knowledge of the information in the
    business record, or from information transmitted by persons with personal knowledge;
    and (b) kept in the course of Wells Fargo's regularly conducted business activities. It is
    the regular practice of Wells Fargo to create and maintain such records.

4.  Debtor(s) has/have executed and delivered or is/are otherwise obligated with respect to
    that certain home equity line of credit agreement (the "Debt Agreement"). A copy of
    the Debt Agreement is attached hereto as Exhibit B.

5.  Debtor(s) executed Creditor's home equity line of credit agreement (the "Debt
    Agreement") and agreed to be bound by its terms. The Debt Agreement is secured by a
    mortgage or deed of trust. Creditor is the original mortgagee/successor or beneficiary
    of the mortgage or deed of trust.

6.  The Debt Agreement is secured by a deed of trust (the "Security Instrument")
    encumbering certain real property commonly known as 29638 Del Rey Rd., Temecula,
    CA 92591. A copy of the Security Instrument is attached hereto as Exhibit C.

I hereby declare under penalty of perjury under the laws of the United States of America that
the foregoing is true and correct.

*Cristy Lynn Bidler*
Cristy Lynn Bidler – VP Loan Documentation
Wells Fargo Bank, N.A.
10/26/16

Page 14

**SERVICE LIST**
**In Re: THERESA GREAVES,**
**Case No.: 6:16-bk-18027-SY**

**Debtor's Counsel**
Barry R. Gore, Esq.
3424 Carson St, Ste 350
Torrance, CA 90503

**Chapter 7 Trustee**
John P. Pringle
6055 East Washington Blvd., Suite 500
Los Angeles, CA 90040

**United States Trustee**
U.S. Trustee Riverside
3801 University Avenue, Suite 720
Riverside, CA 92501

**Judge**
Judge Scott Yun
United States Bankruptcy Court
3420 Twelfth Street, Suite 345
Riverside, CA 92501-3819

# EXHIBIT A

## LEGAL DESCRIPTION

The land referred to herein is situated in the State of CA, County of Riverside, City of Temecula and described as follows:  Lot 129 of Tract 3929, in the City of Temecula, County of Riverside, State of California, as per map recorded in Book 62, page 67 to 80, inclusive of Maps, in the Office of the County Recorder of said County.



Wells Fargo Bank, N.A.

AGREEMENT DATE:   04-03-2007
ACCOUNT #:
REFERENCE #:

# EquityLine with FlexAbility® Agreement and Disclosure Statement (the "Agreement")

**Borrower Name:**
JON C GREAVES And TERI A GREAVES

**Property Address:**
29638 DEL REY RD, TEMECULA, CALIFORNIA 92591

**Mailing Address for Billing Purposes (if different):**
29638 DEL REY RD, TEMECULA, CA 925911807

**Credit Line Limit:**
445,900.00

## SECTION 1:  MY ACCOUNT AGREEMENT

In this Agreement, the words, "I," "me," "my," and "Borrower" (which also means "we," "us," "our," and "Borrowers," if more than one customer signs below) refer to each person who signs this Agreement. The words "you," "your," "Lender," and "the Bank" refer to Wells Fargo Bank, N.A. and any successor or assign or subsequent holder of this Agreement. This Agreement governs my EquityLine with FlexAbility® Account (the "Account") with the Bank. If more than one person signs this Agreement, we are jointly and individually bound by its terms. We are separately liable to the Bank for the entire amount owed on the Account. We are each liable as a principal and not merely as a guarantor, even if one or more of us does not use the Account.

## SECTION 2:  SECURITY INTEREST

I am giving the Bank a deed of trust, mortgage or other security instrument including all modifications, addenda and amendments thereto (the "Security Instrument"), signed the same date as this Agreement. The Security Instrument gives you a security interest in the property located at the address shown above (the "Property").

## SECTION 3:  MY EQUITYLINE WITH FLEXABILITY

My Account is a revolving account. My credit limit is shown above and will be displayed on each of my billing statements. During the Draw Period (described below), my available credit will be my credit limit minus the sum of all unpaid Advances posted to my Account. During the Draw Period, as I repay the principal balance I owe on my Account, my available credit will be replenished. I agree not to request an Advance that would cause my balance to exceed my credit limit. If at any time the balance of my Account exceeds my credit limit, I agree to

1/16

Documents Processed 04-03-2007, 19:55:37


EXHIBIT B

immediately repay the amount that exceeds my credit limit.

I may apply for an increase in my credit limit, and if I do so I agree to pay any application, appraisal and other fees, including increased costs for title insurance, as the Bank may require. If the Bank approves my application and increases my credit limit, I will provide and maintain such additional hazard insurance (including flood insurance, if necessary) and sign any additional documents as the Bank may require. All such increased credit amounts will be governed by the terms and conditions of this Agreement and will be secured by the Security Instrument.

The Bank may from time to time in its sole discretion, approve additional credit for me under the terms of this Agreement. I will receive written notice from the Bank of any such offer to increase my credit limit. I may accept such offer of increased credit by my use of those additional funds and by signing any additional documents the Bank may require. All such increased credit amounts will be governed by the terms and conditions of this Agreement and will be secured by the Security Instrument.

## SECTION 4:  MY ACCOUNT DURING THE DRAW PERIOD

### DRAW PERIOD
My Account has a Draw Period of 10 years from the date of this Agreement during which I may request Advances. At the end of the Draw Period, I may request that the Bank renew the Draw Period for an additional 10 years. The Bank may, at its option, approve my request to extend the Draw Period. I may not obtain Advances after the Draw Period ends.

When the Draw Period ends, the outstanding unpaid Line of Credit Advances will convert to a Final Fixed Rate Advance as detailed below in Section 5, MY ACCOUNT DURING THE REPAYMENT PERIOD.

### ADVANCES DURING THE DRAW PERIOD
There are 2 types of Advances on my Account:

- Line of Credit Advances
- Fixed Rate Advances

The Bank must honor my request for Line of Credit Advances and Fixed Rate Advances (collectively, "Advances") as long as I am in compliance with all terms of this Agreement, including all modifications, addenda and amendments to it, and the Security Instrument.

As I use my Account, my available credit will be my credit limit minus the sum of all unpaid Advances. As I repay the principal balance I owe on my Account, my available credit will be replenished. I will not request an Advance that would cause the balance in my Account to exceed my credit limit, or which would violate the terms of this Agreement or any law. If I do exceed my credit limit, I agree to immediately repay the amount that exceeds my credit limit.

I understand that the Bank may refuse to allow any Advance if the Advance does not comply with every requirement of this Agreement. The Bank may choose at its sole discretion to make an Advance that does not comply. The Bank may allow any Advances in any sequence convenient to the Bank.

The Bank is authorized to make an Advance from my Account when it receives a request given by any person who has signed this Agreement. If there are conflicting demands made by any of us who signed this Agreement, the Bank has the option to refuse to make any Advance that has not been requested by all of us together. The Bank will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when the Bank acts upon such instructions believing them to be genuine.

### LINE OF CREDIT ADVANCES
Each Line of Credit Advance I request will be in the amount of $300 or greater.



## LINE OF CREDIT ADVANCE METHODS

While my Account is not in default, closed, or suspended, I may obtain a Line of Credit Advance by:

- Requesting a Line of Credit Advance in person at any Bank branch
- Requesting a Line of Credit Advance by phone
- Transferring funds by using Wells Fargo Online®
- In other ways the Bank authorizes from time to time
- Obtaining a cash withdrawal or transferring funds by using my Wells Fargo ATM Card or Wells Fargo ATM & Check Card, if offered by the Bank and I select such service
- Writing an Advance request check or draft which the Bank has provided to me
- Using my home equity access credit card, if offered by the Bank and I select such service

## LINE OF CREDIT ADVANCES PERIODIC FINANCE CHARGES

Finance charges begin to accrue on Line of Credit Advances immediately when funds are advanced. The periodic FINANCE CHARGE for a billing cycle is the sum of the periodic FINANCE CHARGE for each day in the billing cycle. To determine the periodic FINANCE CHARGE for a day in the billing cycle, multiply the Daily Periodic Rate by the daily balance for Line of Credit Advances (including current transactions) each day. To determine the daily balance, take the Line of Credit Advances balance at the beginning of each day (excluding any unpaid FINANCE CHARGES or other charges provided for under this Agreement), add any new Line of Credit Advances, and subtract any payments or credits that apply to the repayment of Line of Credit Advances. The result is the daily balance.

The Daily Periodic Rate for Line of Credit Advances is equal to 1/365 (1/366 during leap years) of an Index plus a Margin. The Index is the highest Prime Rate as published in the Western Edition of *The Wall Street Journal* "Money Rates" table. The Margin, the initial Daily Periodic Rate, and the initial ANNUAL PERCENTAGE RATE, are each disclosed below. The Margin will increase if the Automatic Payment feature described in Section 6 below is terminated for any reason. The ANNUAL PERCENTAGE RATE does not include costs other than interest.

The Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE on my Line of Credit Advances will be adjusted the day after an Index change is published, using the new Index value. Therefore, the Daily Periodic Rate for Line of Credit Advances may change (increase or decrease) as often as once each day based on changes in the Index. I understand that any increase may cause me to make larger monthly payments.

In addition, if the Automatic Payment feature is terminated, as described in Section 6, below, each of the Margin values identified above will increase by one-quarter of one percentage point(s) (0.25%). Therefore, the Daily Periodic Rate for Line of Credit Advances may also increase at least once during the Account based on an increase in the Margin when the Automatic Payment feature is terminated. If the Margin increases, the Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE will also increase. I understand that any increase may cause me to make larger monthly payments.

## LIFETIME RATE CAP FOR LINE OF CREDIT ADVANCES

The Daily Periodic Rate for Line of Credit Advances will never exceed 0.049315% (corresponding **ANNUAL PERCENTAGE RATE** of 18.00%). This is the Lifetime Rate Cap for Line of Credit Advances.

## LIFETIME RATE FLOOR FOR LINE OF CREDIT ADVANCES

The Daily Periodic Rate for Line of Credit Advances will never fall below 0.011616% (corresponding **ANNUAL PERCENTAGE RATE** of 4.240%). This is the Lifetime Rate Floor for Line of Credit Advances.

## MY INITIAL RATE FOR LINE OF CREDIT ADVANCES

As discussed above, my Daily Periodic Rate is based on the value of the Index plus a Margin. The initial Index value that applies to my Account will be the value of the Index on the day I open my Account. The following disclosures are based on the value of the Index in effect on 04-02-2007. I understand that if I open my Account after this date, my actual Index value, Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE may be higher or lower than the rates disclosed below.

My Margin for Line of Credit Advances is equal to - SEVEN HUNDRED FIFTY THOUSANDTHS OF ONE

EXHIBIT B

PERCENTAGE POINT (-0.750%) (the "Margin"). As a result, unless the Lifetime Rate Cap for Line of Credit Advances or Lifetime Rate Floor for Line of Credit Advances require the Bank to apply a different rate to my Account, my initial Daily Periodic Rate is 0.020548% (corresponding ANNUAL PERCENTAGE RATE of 7.500%).

## LINE OF CREDIT ADVANCES MINIMUM MONTHLY PAYMENT
During the Draw Period, my Minimum Monthly Payment for Line of Credit Advances shall be equal to:

> The sum of all accrued and unpaid periodic FINANCE CHARGES on Line of Credit Advances, plus credit insurance premiums, if any.

## FIXED RATE ADVANCES DURING THE DRAW PERIOD
I have the option to convert outstanding unpaid Line of Credit Advances to Fixed Rate Advances during the Draw Period based on credit limit availability. The minimum Fixed Rate Advance during the Draw Period is $10,000.

I may request up to 8 Fixed Rate Advances during the Draw Period. No more than 3 Fixed Rate Advances may be outstanding at any one time. At the time I request a Fixed Rate Advance, I may select the repayment term for that Fixed Rate Advance. The repayment term must be a period of whole years and in the range described below:

| Fixed Rate Advance Amount | Term Range |
|---|---|
| $10,000 - 19,999.99 | 5 to 15 years |
| $20,000 - 49,999.99 | 5 to 30 years |
| $50,000 and above | 7 to 30 years |

## FIXED RATE ADVANCE METHODS DURING THE DRAW PERIOD
While my Account is not in default, closed, or suspended, I may obtain a Fixed Rate Advance by:
- Requesting a Fixed Rate Advance in person at any Bank branch.
- Requesting a Fixed Rate Advance by phone.

## FIXED RATE ADVANCES PERIODIC FINANCE CHARGES DURING THE DRAW PERIOD
Fixed Rate Advances will accrue periodic FINANCE CHARGES beginning on the day that the Bank converts any Line of Credit Advances to a Fixed Rate Advance. I will be charged a periodic FINANCE CHARGE on all outstanding unpaid Fixed Rate Advances each day at a fixed Daily Periodic Rate. To determine the periodic FINANCE CHARGE for a day in the billing cycle, multiply the Daily Periodic Rate by the daily balance for the Fixed Rate Advance (including current transactions) each day. To determine the daily balance for the Fixed Rate Advance, take the Fixed Rate Advance balance at the beginning of each day (excluding any unpaid FINANCE CHARGES or other charges provided for under this Agreement), and subtract any payments or credits that apply to the repayment of the Fixed Rate Advance. The result is the daily balance.

The Daily Periodic Rate for Fixed Rate Advances is equal to 1/365 (1/366 during leap years) of an Index plus a Margin. The Index is the highest Prime Rate as published in the Western Edition of *The Wall Street Journal* "Money Rates" table. The Bank will use the value of the Index in effect on the last business day preceding the day the Bank receives my request for a Fixed Rate Advance. The Margin for Fixed Rate Advances is eight percentage point(s) (8.0%). The Bank may, in its sole discretion, apply a lower Margin. The corresponding ANNUAL PERCENTAGE RATE for Fixed Rate Advances will never be more than the Lifetime Rate Cap for Fixed Rate Advances shown below. The ANNUAL PERCENTAGE RATE does not include costs other than interest.

The Margin for any existing Fixed Rate Advances will increase by one-quarter of one percentage point(s) (0.25%) if the Automatic Payment feature is terminated, as described in Section 6, below. Therefore, the Daily Periodic Rate for Fixed Rate Advances may also increase at least once during the Account based on an increase in the Margin when the Automatic Payment feature is terminated. Any such increase will result in an increase in the then outstanding Fixed Rate Advance Minimum Monthly Payments, each of which will be reset at an

4/16


EXHIBIT B

amount sufficient to repay the remaining balance of the Fixed Rate Advance within its applicable term in substantially equal, fully amortizing monthly payments at its applicable corresponding ANNUAL PERCENTAGE RATE.

## LIFETIME RATE CAP FOR FIXED RATE ADVANCES DURING THE DRAW PERIOD

The Daily Periodic Rate for Fixed Rate Advances will not exceed 0.0493% (corresponding ANNUAL PERCENTAGE RATE of 18.000%). This is the Lifetime Rate Cap for Fixed Rate Advances.

## FIXED RATE ADVANCES MINIMUM MONTHLY PAYMENT DURING THE DRAW PERIOD

During the Draw and Repayment Periods, my Minimum Monthly Payment for each Fixed Rate Advance will be equal to the amount of principal plus periodic FINANCE CHARGE sufficient to repay the Fixed Rate Advance within its applicable term in substantially equal, fully amortizing monthly payments at the applicable corresponding ANNUAL PERCENTAGE RATE. This assumes that all payments will be made on their due dates, which will be the same as the due dates for my Line of Credit Advances Minimum Monthly Payment described above. If my payments are not consistently made when due, the Fixed Rate Advance Minimum Monthly Payment may not fully repay the Fixed Rate Advance over its term and my final payment may be higher. During the Draw Period, my available credit for new Line of Credit Advances will be replenished by the amount of principal I repay on my Fixed Rate Advances.

## MY TOTAL PAYMENT DUE DURING THE DRAW PERIOD

I will receive monthly billing statements from the Bank. I must pay at least the amount of the Total Payment Due by the Date Due, as shown on each monthly billing statement.

The "Total Payment Due" during the Draw Period consists of my Line of Credit Advances Minimum Monthly Payment plus my Fixed Rate Advances Minimum Monthly Payment(s) together with all past due amounts and overlimit amounts and all other charges due.

## SECTION 5: MY ACCOUNT DURING THE REPAYMENT PERIOD

### REPAYMENT PERIOD

I understand that I may not receive new Advances after the Draw Period ends. At that time, I will begin the Repayment Period, which will continue until the Maturity Date described below, but in no event more than 30 years.

### REPAYMENT OF OUTSTANDING FIXED RATE ADVANCES

During the Repayment Period, I will continue to make any Fixed Rate Advance Minimum Monthly Payments that were in effect at the end of the Draw Period. If my payments are not consistently made when due, the Fixed Rate Advance Minimum Monthly Payment may not fully repay the Fixed Rate Advance over its term and my final payment may be higher.

### REPAYMENT OF FINAL FIXED RATE ADVANCE

At the end of the Draw Period, the outstanding unpaid Line of Credit Advances balance will be converted into a final Fixed Rate Advance (the "Final Fixed Rate Advance"). The Final Fixed Rate Advance will have a term of 15 years if my total unpaid Line of Credit Advances balance is less than $20,000, or 30 years if my total unpaid Line of Credit Advances balance is $20,000 or more (unless I request a shorter term).

The Final Fixed Rate Advance Minimum Monthly Payment will be the greater of $100 or an amount sufficient to repay the Final Fixed Rate Advance balance by the end of the scheduled term in substantially equal, fully amortizing monthly payments of principal and periodic FINANCE CHARGE at the applicable corresponding ANNUAL PERCENTAGE RATE. If my payments are not consistently made when due, the Final Fixed Rate Advance Minimum Monthly Payment may not fully repay the Final Fixed Rate Advance over its term and my final payment for the Final Fixed Rate Advance may be higher. The Bank will notify me in advance of any changes to my Total Payment Due as a result of the Final Fixed Rate Advance Minimum Monthly Payment.

## PERIODIC FINANCE CHARGE ON FINAL FIXED RATE ADVANCE BALANCE

Periodic FINANCE CHARGES on my Final Fixed Rate Advance balance will begin to accrue on the first day of

Documents Processed 04-02-2007, 19:55:37


EXHIBIT B

the Repayment Period. I will be charged a periodic FINANCE CHARGE based on the unpaid Final Fixed Rate Advance balance at the end of each day at a fixed Daily Periodic Rate.

The Daily Periodic Rate for the Final Fixed Rate Advance is equal to 1/365 (1/366 during leap years) of an Index plus a Margin. The Index is the highest Prime Rate as published in the Western Edition of *The Wall Street Journal* "Money Rates" table. The Bank will use the Index value published on the last business day during the Draw Period. The Margin for the Final Fixed Rate Advance is eight percentage point(s) (8.0%). The Bank may, in its sole discretion, apply a lower Margin. The corresponding ANNUAL PERCENTAGE RATE on my Final Fixed Rate Advance will never be more than the Lifetime Rate Cap for Fixed Rate Advances shown below. The ANNUAL PERCENTAGE RATE does not include costs other than interest.

The Margin for the Final Fixed Rate Advance will increase by one-quarter of one percentage point(s) (0.25%) if the Automatic Payment feature is terminated, as described in Section 6, below, during the Repayment Period. Therefore, the Daily Periodic Rate for the Final Fixed Rate Advance may also increase at least once during the Repayment Period based on an increase in the Margin when the Automatic Payment feature is terminated. Any such increase will result in an increase in the then outstanding Final Fixed Rate Advance Minimum Monthly Payment, which will be reset at the greater of $100 or the amount sufficient to repay the remaining balance of the Final Fixed Rate Advance within its applicable term in substantially equal, fully amortizing monthly payments at its applicable corresponding ANNUAL PERCENTAGE RATE.

## LIFETIME RATE CAP FOR MY FINAL FIXED RATE ADVANCE
The Daily Periodic Rate for my Final Fixed Rate Advance will not exceed 0.0493% (corresponding ANNUAL PERCENTAGE RATE of 18.000%). This is the Lifetime Rate Cap for my Final Fixed Rate Advance.

## MY TOTAL PAYMENT DUE DURING THE REPAYMENT PERIOD
I must pay at least the amount of the Total Payment Due by the Date Due, as shown on each monthly billing statement.

The "Total Payment Due" during the Repayment Period is the total of each Fixed Rate Advances Minimum Monthly Payment that is still due as the result of Fixed Rate Advances in effect on the day before the end of the Draw Period, plus the Final Fixed Rate Advance Minimum Monthly Payment as described above, together with all past due amounts and overlimit amounts and all other charges due.

## MATURITY DATE
The Maturity Date on my Account shall be the latest maturity date of any Fixed Rate Advance or the Final Fixed Rate Advance, but in no event more than 30 years from the end of the Draw Period. At that time, any remaining balance must be paid in full.

## SECTION 6: AUTOMATIC PAYMENT DISCOUNT

I have chosen to make Automatic Payments as specified in the Authorization for Automatic Transfer. I have received an interest rate discount for making this choice. I understand that the ANNUAL PERCENTAGE RATE and the Margin that apply to my Line of Credit Advances, as described in Section 4 above, reflect a discount you gave me for this Authorization for Automatic Transfer. If the Automatic Payments are terminated for any reason at any time during the Draw Period by anyone, the Margin that applies to my Line of Credit Advances, as set forth in Section 4 above, will increase by one quarter of one percentage point(s) (0.25%) effective the day the Automatic Payments are terminated. If the Margin increases, the Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE applicable to my Line of Credit Advances, and my Line of Credit Advances Minimum Monthly Payment, may also increase. My monthly billing statement will show me my new Daily Periodic Rate, corresponding ANNUAL PERCENTAGE RATE and Line of Credit Advances Minimum Monthly Payment as applicable.

In addition, if the Automatic Payment feature is terminated at any time by anyone, for any reason, during the Draw or the Repayment Period, then the corresponding ANNUAL PERCENTAGE RATE on any outstanding Fixed Rate Advance and/or Final Fixed Rate Advance will be subject to a one time increase of one quarter of one percentage point(s) (0.25%), effective the day the Automatic Payments are terminated. If this happens, my

EXHIBIT B

Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE for any outstanding Fixed Rate Advance and Final Fixed Rate Advance will increase, causing an increase in my Minimum Monthly Payments for each of my then outstanding Fixed Rate Advances and the Final Fixed Rate Advance. Each Fixed Rate Advance Minimum Monthly Payment will be reset at an amount sufficient to repay the remaining balance of the applicable Fixed Rate Advance within its applicable term in substantially equal, fully amortizing monthly payments at its increased corresponding ANNUAL PERCENTAGE RATE. The Final Fixed Rate Advance Minimum Monthly Payment will be reset at the greater of $100 or the amount sufficient to repay the Final Fixed Rate Advance within its applicable term in substantially equal, fully amortizing monthly payments at its increased corresponding ANNUAL PERCENTAGE RATE. My monthly billing statement will show me my new Daily Periodic Rate, corresponding ANNUAL PERCENTAGE RATE, the new Fixed Rate Advance Minimum Monthly Payments and the new Final Fixed Rate Advance Minimum Monthly Payment.

## SECTION 7: OTHER FINANCE CHARGES

In addition to paying periodic FINANCE CHARGES, as described in Sections 4 and 5 above, I also agree to pay the following additional fees, each of which is a FINANCE CHARGE:

### ANNUAL FEE
Beginning one year after the date of this Agreement, and continuing each year of the Draw Period, whether or not I use the Account, I will pay a $75.00 non-refundable annual fee. I will not have to pay an annual fee if my Account is open (has not been closed or suspended under Section 17 or 18 below) and the average daily balance in my Account is $20,000 or greater for the 12 monthly billing cycles up to and including my anniversary month. For the purpose of making this determination, the Bank will add the average daily balances for Line of Credit Advances and Fixed Rate Advances from the previous 12 monthly billing cycles and divide the total by 12.

## SECTION 8: CLOSING COSTS

I agree to pay to the Bank the following closing costs at the opening of my Account:

N/A

* These amounts are estimates. The actual amounts charged and paid for these fees are shown on the HUD Settlement Statement that is attached to and incorporated into this Agreement by reference.

The following closing costs are FINANCE CHARGES:

N/A

## SECTION 9: ADDITIONAL FEES, COSTS AND CHARGES

In addition to the FINANCE CHARGES and closing costs described above, I agree to pay the following non-refundable fees, costs and charges, which will be owed once charged to my Account.

### LATE CHARGES
During the Draw Period, I will pay a late charge equal to the greater of five dollars ($5.00) or five percent (5%) of the Line of Credit Minimum Monthly Payment if my payment is more than 10 days past due.

During the Repayment Period, I will pay a late charge equal to the greater of five dollars ($5.00) or five percent (5%) of the sum of all Fixed Rate Advance Minimum Monthly Payments if my payment is more than 10 days past due.

### PREPAYMENT FEE
I agree to pay a prepayment fee of $500.00. This fee will be due and payable in full at any time within the first 3 years from the date of this Agreement if I close my Account (for any reason other than default due to non-payment, casualty loss, refinance with you or your affiliate, or termination by the Bank). If my Account remains

EXHIBIT B

open (is not closed or suspended under Section 17 or 18 below) for more than 3 years from the date of this Agreement, no prepayment fee will be assessed. No tender of a prepayment of all amounts due under this Agreement shall be effective unless and until such prepayment is accompanied by the applicable prepayment fee.

## OTHER CHARGES

To the extent allowed by law, I agree to pay the following fees if I request or authorize these additional services:

- (a) **Fax Fee:** The Bank will charge a fax fee in the amount of ten dollars ($10.00) if I request or authorize others to request any document or letter to be transmitted by facsimile (fax) machine.
- (b) **Research Fee and Photocopy Fee:** The Bank will charge a research/photocopy fee in the amount of five dollars ($5.00) per photocopy if I request or authorize others to request that the Bank research my Account or provide photocopies of Account documents for any purpose other than a billing error inquiry.
- (c) **Reconveyance or Satisfaction Fee:** The Bank will charge reconveyance and satisfaction fees as allowed by applicable law.
- (d) **Stop Payment Fee:** The Bank will charge a stop payment fee in the amount of twenty-five dollars ($25.00) if I request or authorize others to request that the Bank stop payment on a draft I have used to request a Line of Credit Advance.
- (e) **Return Check Fee:** The Bank will charge a return check fee in the amount of twenty-five dollars ($25.00) if I make a payment with a check that is dishonored for any reason.
- (f) **Overlimit Fee:** The Bank will charge an overlimit fee in the amount of twenty-five dollars ($25.00) for each billing cycle in which I have exceeded my credit limit or have requested an Advance that would have caused me to exceed my credit limit.
- (g) **Return Advance Check Fee (insufficient funds):** The Bank will charge a return advance check fee in the amount of twenty-five dollars ($25.00) for each check or draft used to request a Line of Credit Advance that is returned unpaid (dishonored) by the Bank due to the requested Advance not meeting all requirements of this Agreement.

## SECTION 10: COLLECTION COSTS AND ATTORNEY'S FEES

If I am in default, I will pay the Bank's collection costs, attorney's fees and other expenses of enforcing the Bank's rights under this Agreement and the Security Instrument, unless prohibited by applicable law.

## SECTION 11: METHOD OF PAYMENT

Depending on my chosen method of payment, the Bank will do one of the following each monthly billing cycle, during both the Draw and Repayment Periods:

**Automatic Payments:** Provide me with a monthly billing statement and automatically charge my qualified deposit account (under the terms of a separate written Authorization for Automatic Transfer) for the Total Payment Due. Other charges due as shown on my monthly billing statement, other than credit insurance premiums and annual fees, if any, must be paid separately by me. However, if I have past due amounts on my Account, the Bank will not use an Automatic Payment to collect these amounts and all amounts due as shown on my monthly billing statement must be paid by me.

## SECTION 12: SCHEDULED PAYMENT DUE DATE

My monthly payment due date for my Total Payment Due is the 15TH day of each and every month during both the Draw and Repayment Periods.

## SECTION 13: MY PROMISE TO PAY

I promise to pay to the order of the Bank the total of all Advances which I receive or which I authorize to be made from my Account. I promise to pay the total of any FINANCE CHARGE, plus all amounts past due, overlimit amounts, and any late charges, fees, other charges and other obligations charged to my Account under

EXHIBIT B

this Agreement or the Security Instrument. All payments made under this Agreement will be made in U.S. Dollars. I will not mail any cash payments to the Bank. I may not use Advance request checks to make payments on my Account.

The Bank may, at its discretion, withhold a portion of the available credit on my Account up to the amount of any payment due in order to assure that my check or other payment instrument is honored.

I will make payments at the Bank's address for receiving a payment, as indicated on my payment coupon and billing statement, unless another payment method is authorized by the Bank. Each non-electronic payment I make will be accompanied by the remittance portion of my billing statement.

I understand that payments I make by mail to the address indicated on my billing statement or payment coupon will be credited to my Account as of the date received (including Saturdays, Sundays, and holidays) if the Bank receives the payment prior to 5 p.m. local time for the payment address.

Payments I make from a qualified account ("Automatic Payments") pursuant to an Authorization for Automatic Transfer will be credited to my Account on the date received (including Saturdays, Sundays, and holidays).

Payments I make at a Bank branch and received prior to established cut-off times will be credited to my Account on the business day the payment is received by the Bank. For purposes of this rule, a business day includes any day other than Saturdays, Sundays, and Bank observed holidays. Payments made at a Bank branch received on a Saturday, Sunday, or Bank observed holiday or after established cut-off times will be credited as of the next business day.

Payments I make online, by ATM, by telephone, or by any other means the Bank may make available to me and received prior to established cut-off times will be credited on the business day the payment is received by the Bank. For purposes of this rule, a business day includes any day other than Saturdays, Sundays, and federal holidays. Payments made online, by ATM, by telephone, or by any other means the Bank may make available to me received on a Saturday, Sunday, or federal holiday or after established cut-off times will be credited as of the next business day.

I will not make payment or authorize others to make payment for me by means of a single aggregated payment, which includes payments for this Account and any other account(s), unless the payment is made in compliance with the Bank's requirements for multiple account payments.

The Bank may accept late payments, partial payments, post-dated checks, or any form of payment containing a restrictive endorsement, without losing any of the Bank's rights under this Agreement. The Bank's acceptance of checks or money orders labeled "payment in full," or words to that effect, will not constitute an accord and satisfaction nor a waiver of any rights the Bank has to receive full payment. If I intend to condition a payment, pay the Account in full with less than the total amount owed, or give payment instructions, I will clearly set out such intention, conditions and instructions in a separate letter accompanying my payment, and mail both to Wells Fargo Bank, N.A., P.O. Box 2993, Portland, OR 97208.

## SECTION 14: TAX DEDUCTIBILITY

I understand that I should consult a tax advisor regarding the deductibility of interest and charges under my Account.

## SECTION 15: REEVALUATION OF CREDIT QUALIFICATIONS AND CREDIT REPORTS

My signature on this Agreement authorizes the Bank to obtain credit information about me, including credit bureau reports, at any time. Such credit bureau reports may be requested or used in connection with (a) renewal or extension of this Agreement, (b) review of my Account, (c) taking any collection action, or (d) any other legitimate purposes associated with my Account. I agree to submit current financial information to the Bank upon the Bank's request. The Bank may reexamine and reevaluate my credit qualifications at any time. The Bank may report its experience with me and my Account to others, to the extent allowed by law.



## SECTION 16: PAYOFF BALANCE INFORMATION

The Bank will tell me the balance required on any given day to pay off my Account in full, if I so request. If such request is made on my behalf by an escrow holder, settlement agent or other third party on my behalf during the Draw Period, the Bank may immediately freeze my Account. I agree that the Bank's receipt of such a request from an escrow holder, settlement agent or other third party on my behalf will be considered to be a request by me to suspend credit privileges on my Account. While my Account is frozen, I cannot receive new Advances and the Bank will return unpaid any Advance request checks the Bank receives and will refuse to honor any other Advance request made on my Account. This payoff freeze will be lifted and my Account reopened if the request for payoff balance information is withdrawn, in which event the Bank may require written confirmation from the escrow holder, settlement agent or other third party on my behalf that the escrow or other settlement has been cancelled.

## SECTION 17: DEFAULT

I will be in default if (a) I fail to meet the repayment terms of this Agreement for any outstanding balance, or (b) there is fraud or material misrepresentation by me in connection with this Agreement, or (c) any action or inaction by me adversely affects the Bank's security in the Property, including without limitation, transfer of the Property without the Bank's consent, failure to maintain required insurance or pay required taxes, revocation or termination of any revocable trust that is an owner of the Property, or the death of any person who has signed this Agreement, or (d) I am an executive officer of the Bank and federal law governing credit extended by a bank to its executive officer, including without limitation Section 215.5(d)(4) of Federal Reserve Regulation O (12 CFR § 215.5(d)(4)), permits or requires immediate payment of my entire Account balance.

If I am in default, the Bank, subject to applicable law, may do any or all of the following: (a) close my Account immediately, without notice; (b) return unpaid any outstanding Advance request checks drawn on my Account and refuse to honor any other Advance request made on my Account; and (c) require immediate payment of the entire balance of my Account, and, if I fail to pay, exercise the Bank's rights under the Security Instrument, which may result in the loss of the Property. If I am in default, the method of determining the Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE will remain as described in this Agreement.

The Bank and I agree that notwithstanding any other provision of this Agreement or the Security Instrument, the Bank will have the right to terminate or suspend my Account to the extent permitted by applicable law.

## SECTION 18: CLOSURE OR SUSPENSION OF ACCOUNT, REDUCTION OF CREDIT LIMIT; REINSTATEMENT OF CREDIT

### CLOSURE OR SUSPENSION OF ACCOUNT, REDUCTION OF CREDIT LIMIT BY BORROWER

Any one Borrower can close the Account by paying in full and sending a signed letter to the Bank at the address indicated on my monthly billing statement requesting that the Account be closed. Any one Borrower may terminate the Advance feature, at any time during the Draw Period, by sending a signed letter to the Bank at the address indicated on my monthly billing statement requesting the termination of the Advance feature. To reactivate the Advance feature on the Account during the Draw Period, the Bank will require all Borrowers to sign a written request and mail to the address indicated on my monthly billing statement.

### CLOSURE OR SUSPENSION OF ACCOUNT, REDUCTION OF CREDIT LIMIT BY BANK

I will receive a written notice if the Bank suspends or freezes my Account or reduces my credit limit as required under applicable law. The notice will include the reason(s) for such action(s). Thereafter, if I wish to reinstate my Account or increase my credit limit, I agree to send a written request to the Bank at the address specified on my monthly billing statement, signed by all of the Borrowers, along with satisfactory evidence to the Bank that the reason(s) for suspension or reduction of my Account no longer exist(s). I also agree to provide the Bank promptly with any additional information necessary to support my request.



The Bank may suspend the use of my Account and temporarily prohibit future Advances during the Draw Period, or the Bank may reduce my credit limit, for any reason permitted by applicable law, including without limitation, (a) if the annualized Daily Periodic Rate equals or exceeds the Lifetime Rate Cap stated herein, (b) there is any material change in my financial circumstances that the Bank reasonably believes will make me unable to fulfill my repayment obligations under this Agreement, (c) the value of the Property declines significantly below its original appraised value, as determined by the Bank, (d) my failure to comply with any material obligation under this Agreement or the Security Instrument, (e) a regulatory authority has notified the Bank that continued Advances would constitute an unsafe and unsound business practice, (f) I am in default under Section 17 above, or (g) government action prevents the Bank from imposing the ANNUAL PERCENTAGE RATE provided for in this Agreement or impairs the Bank's security interest in the Property, such that the value of the security interest is less than 120 percent of the credit limit.

In the event of a suspension of my Account, the Bank is authorized to obtain such information as may be required by the Bank, including without limitation, credit reports and appraisals of the Property, to evaluate any request by me to reinstate the Account. To the extent permitted by applicable law, I agree to pay to the Bank the cost of obtaining such additional information.

If my Account is closed or suspended for any reason, the Bank may return unpaid any outstanding Advance request checks drawn on my Account and refuse to honor any other Advance request made on my Account. I will continue to be responsible for full payment of the balance of my Account as well as all other Account obligations, according to the terms of this Agreement.

## SECTION 19: FURTHER ASSURANCES

I agree that I will take any steps, including but not limited to, signing, filing or recording any documents, which are necessary or which the Bank deems appropriate, to be sure that my obligations to the Bank under this Agreement become and continue to be secured by the Security Instrument.

## SECTION 20: CHANGE IN RESIDENCE OR OWNERSHIP OF THE PROPERTY

I agree to notify the Bank immediately if (a) the Property is my primary residence and I cease to live in the Property as my primary residence, or (b) there is any change in the ownership of the Property. I agree that my Account shall be closed and that the entire outstanding balance of my Account shall be due and payable immediately on any sale or other transfer of the Property, unless prohibited by applicable law. In this regard, I understand that my Account is secured by a Security Instrument containing the following or a substantially similar provision:

Upon sale, transfer, hypothecation, assignment or encumbrance, whether voluntary, involuntary, or by operation of law, of all or any part of the Property or any interest therein, then at its sole option, the Bank may, by written notice to Trustor (or Grantor or Mortgagor), declare all obligations secured hereby immediately due and payable, except to the extent that such acceleration and in such particular circumstances where exercise of such a right by the Bank is prohibited by law.

## SECTION 21: CHANGE IN TERMS

To the extent allowed by law, I agree that the Bank may make certain changes to the terms of this Agreement at specified times or upon the occurrence of specified events. The Bank may make insignificant changes, such as changes in the address for payments, billing cycle dates, payment due dates, day of the month on which Index values are determined, Index or interest rate rounding rules, and balance computation method (if the change produces an insignificant difference in the interest or FINANCE CHARGE I am required to pay). The Bank may also make changes that will benefit me, such as additional options or a temporary reduction in rates or fees. In accordance with federal law, the Bank may also change the Index and Margin used to determine the ANNUAL PERCENTAGE RATE(S) that apply to my Line of Credit Advances and/or Fixed Rate Advances if the original Index is no longer available. The Bank may make any of the changes discussed above without my consent, unless applicable law provides otherwise. The Bank will give me any notice of change that is required by law. I may also agree to changes in writing.



EXHIBIT B

## SECTION 22: WAIVERS

### BORROWER'S WAIVERS

I waive my rights to require the Bank to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Agreement, or who agrees to make payments to the Bank if I fail to keep my promises under this Agreement, or who signs this Agreement to transfer it to someone else, waives these rights. These persons are known as "guarantors, sureties and endorsers."

### BANK'S NON-WAIVER

The Bank may fail to make use of any of its rights under this Agreement or the Security Instrument or under applicable law on one or more occasions, or delay or partially exercise such rights, without waiving any of its rights or amending any of my obligations. The Bank may fail to make use of any of its rights or delay or partially exercise such rights against one party, without waiving any of its rights against any other party to this Agreement.

## SECTION 23: GOVERNING LAW; SEVERABILITY

All interest, fees and other amounts charged or accruing in connection with this Agreement which are considered "interest" within the meaning of Section 85 of the National Bank Act (12 USC § 85; 12 CFR 7.4001(a)) shall be governed by and interpreted under South Dakota law. In all other respects, this Agreement and all related documents, as well as the rights, remedies, and duties of the Bank and the Borrower(s), shall be governed and interpreted by federal law with respect to national banks and, to the extent not preempted by federal law, the laws of the state in which the Property is located.

If any provision of this Agreement or the Security Instrument is determined to be invalid or unenforceable by a court of competent jurisdiction, the rest of this Agreement will remain in full force and effect and enforceable according to its terms. All references in this Agreement to the singular shall include the plural and vice versa.

## SECTION 24: LOST OR STOLEN ADVANCE REQUEST CHECKS; BILLING ERRORS

### LOST OR STOLEN ADVANCE REQUEST CHECKS (WHERE AVAILABLE); BILLING ERRORS

I will immediately contact the Bank at the phone number on my monthly billing statement and confirm by letter if any of my Advance request checks are ever lost or stolen, if there are any errors in my monthly billing statement, or if I suspect any unauthorized use of my Account.

The Bank will not return to me my cancelled Advance request checks or other Advance request instruments after paying them. The Bank will make available photocopies of my Advance request checks and other Advance request instruments upon request. I will examine my Account statements promptly in order to identify any improper or unauthorized entries. In consideration for the Bank's payment of each Advance request check, I agree that even though I will not receive the original Advance request checks, all time periods under the Uniform Commercial Code (UCC) for examining my monthly billing statement and reporting improper entries, including the UCC's statutes of limitation with respect to forged, unauthorized, or missing signatures or endorsements, will begin from the time my Account statement is first sent or made available to me.

### UNAUTHORIZED TRANSACTIONS

I will notify the Bank if someone has transferred, or may transfer money from my Account without my permission, or if I suspect any fraudulent activity on my Account. I can call the Wells Fargo Phone Bank at the telephone number on my monthly billing statement, anytime, 24 hours a day, 7 days a week, or advise my local Bank branch office. I may also send written notice to the Bank at the address indicated on my billing statement.

### Billing Rights - Keep This Notice For Future Use

12/16

Documents Processed 04-02-2007, 19:55:37



This notice contains important information about my rights and the Bank's responsibilities under the Fair Credit Billing Act.

### Notify The Bank In Case Of Errors Or Questions About My Bill

If I think my billing statement is wrong, or if I need more information about a transaction on my billing statement, I will send a letter on a separate page to the Bank, as soon as possible, at the address listed on my billing statement. The Bank must hear from me no later than 60 days after the Bank sent me the first billing statement on which the suspected error or problem appears. I can telephone the Bank, but doing so will not preserve my rights.

In my letter, I will provide the Bank with the following information:

* My name, Account number and daytime phone number, and
* The dollar amount of the suspected error, and
* A description of the error and explanation, if possible, as to why I believe there is an error. If I need more information, I will describe the item I am not sure about.

If I have authorized the Bank to pay my minimum monthly payment automatically from my checking account at the Bank, I can stop the payment of any scheduled automatic payment if I believe a billing error has occurred. To stop the payment, my letter must reach the Bank at least three business days before the automatic payment is scheduled to occur.

### My Rights And The Bank's Responsibilities After Receipt Of My Written Notice

The Bank must acknowledge my letter within 30 days, unless the Bank has corrected the error by then. Within 90 days, the Bank must either correct the error or explain why the Bank believes the billing statement was correct.

After the Bank receives my letter, the Bank cannot try to collect any amount I question, or report me as delinquent. The Bank can continue to bill me for the amount I question, including finance charges, and the Bank can apply any unpaid amount against my credit limit. I do not have to pay any questioned amount while the Bank is researching my Account, but I am still obligated to pay the parts of my bill that are not in question.

If the Bank finds that a mistake was made on my billing statement, I will not have to pay any finance charges related to the questioned amount. If the Bank didn't make a mistake, I will have to pay finance charges, and I will have to make up any missed payments on the questioned amount. In either case, the Bank will send me a statement of the amount I owe and the date that payment is due.

If I fail to pay the amount that the Bank determines I owe, the Bank may report me as delinquent. However, if the Bank's explanation does not satisfy me and I write to the Bank within ten days telling the Bank that I still refuse to pay, the Bank must tell anyone the Bank reports me to that I have a question about my bill. And, the Bank must tell me the name of anyone the Bank reports me to. When the matter has been settled between the Bank and me, the Bank must tell anyone the Bank reports me to that the matter has been settled.

If the Bank does not follow the above rules, the Bank cannot collect the first $50 of the questioned amount, even if my billing statement was correct.

### Special Rule For Credit Card Purchases

If I have a problem with the quality of property or services that I purchased with the Credit Card (defined in Section 27 below), and I have tried in good faith to correct the problem with the merchant, I may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right.

(a) I must have made the purchase in my home state or, if not within my home state within 100 miles of my current mailing address; and
(b) The purchase price must have been more than $50.

These limitations do not apply if the Bank owns or operates the merchant, or if the Bank mailed me the

13/16

Documents Processed 04-02-2007, 19:55:37

EXHIBIT B

advertisement for the property or services.

## SECTION 25: NOTICES

Unless applicable law requires a different method, any notice that must be given to me or to anyone else who signs, guarantees or endorses this Agreement may be given by mailing it to my address as set forth above in this Agreement, or to a different address if I have properly notified the Bank of that different address. Any notice that I may send to the Bank must be given by mailing it to the Bank at the address provided on my billing statement, unless the type of notice is more specifically addressed in this Agreement and a different address is provided herein.

If I contact you by phone, I acknowledge that telephone calls between me and the Bank or any of the Bank's affiliates may be monitored and recorded by the Bank or the Bank's affiliates to ensure that my inquireies are handled promptly, courteously and accurately.

I agree that the Bank may contact me by telephone. I agree to accept calls from the Bank at any telephone number that I provide to the Bank.

I agree to accept calls from the Bank or the Bank's designated representatives which begin with a verbal statement or taped message identifying the call as a business call from the Bank. I acknowledge and understand that some of the telephone calls between me and the Bank may be monitored and recorded to ensure that the Bank handles these calls courteously and accurately.

## SECTION 26: HOME EQUITY ACCESS CREDIT CARD ACCESS

### CREDIT CARD ACCESS
I hereby authorize the Bank to issue home equity access credit card(s) (referred to as the "Credit Card" and collectively as the "Credit Cards") in the name of each Borrower who signs below. While the Account is not in default, closed or suspended, any Borrower may borrow money from the Account by use of the Borrower's Credit Card. If this is a joint Account, each Borrower is responsible for payment of the entire amount due resulting from the use of the Credit Card.

I understand that all Advances obtained by using the Credit Card will be Line of Credit Advances and not Fixed Rate Advances. If I want an Advance to be converted to a Fixed Rate Advance, I must advise the Bank directly in a separate communication.

Notwithstanding any default, termination or suspension of my Account, my right to use the Credit Card will terminate if and when my Account moves into the Repayment Period.

### FOREIGN CURRENCY TRANSACTIONS
If I engage in a transaction in a currency other than U.S. Dollars using an home equity access credit card, then Visa International ("VISA") will convert the charge to a U.S. Dollar amount. The exchange rate used to convert the currency to U.S. Dollars will be a rate selected by VISA from the range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate VISA itself receives, or the government-mandated rate in effect for the applicable central processing date. The currency conversion rate on the applicable central processing date may differ from the rate that would have been used on the date of the transaction or the date the transaction posted to my billing statement.

### BANK NOT RESPONSIBLE FOR REFUSAL TO HONOR CREDIT CARDS
The Bank is not responsible for the refusal of any merchant, bank or ATM to honor or accept the Credit Cards issued on my Account.

### AUTHORIZATIONS
Some transactions with the Credit Card will require prior approval. These prior approvals are called "authorizations." If the Bank's authorization system is not working fully or if the number of transactions exceeds the limit for a certain period of time, the Bank may not give or the Bank may be unable to give an

14/16

Documents Processed 04-02-2007, 19:55:37

EXHIBIT B

authorization even though the transaction would not exceed my credit limit and my Account is in good standing. For security reasons, the Bank cannot explain the details of how the authorization system works. I agree that the Bank will not be liable for failing to provide an authorization.

## LOST OR STOLEN CREDIT CARDS

In addition to my other obligations to notify the Bank regarding billing errors and lost or stolen Advance request checks, I will immediately notify the Bank and confirm by letter if my Credit Card is ever lost or stolen or if another person has my Secret Code or Pin Number, if there are any errors on my monthly billing statement, or I suspect any unauthorized use of the Account and my Credit Card. I agree to assist the Bank in determining the facts, circumstances, and other pertinent information relating to any loss, theft, or possible unauthorized use of my Credit Card. If my Account is in good standing, the Bank will send me a new Credit Card with a new account number to replace the Credit Card that was lost, stolen or wrongfully used. Although I will be issued a new account number, I will not be considered to have opened a new account, and my existing balance will be transferred to the replacement account number.

I may be liable for the unauthorized use of my Credit Card. I will not be liable for unauthorized use that occurs after I notify the Bank, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, my maximum liability will not exceed $50. To notify the Bank of a lost or stolen Credit Card, or of unauthorized use of my Credit Card, I can either call the Bank at the telephone number on my monthly billing statement or at the number listed below anytime, 24 hours a day, 7 days a week, or I can advise my local Wells Fargo office followed by a written notice to:

Wells Fargo Bank, N.A., P.O. Box 4233, Portland, OR 97208-4233
Phone Number: 866-828-9430

## SECTION 27: ADDENDA

I agree to the following attached addenda, modifications or amendments:

N/A

## SECTION 28: STATE DISCLOSURES

N/A

THIS AGREEMENT, THE SECURITY INSTRUMENT AND THE CLOSING DOCUMENTS EXECUTED HEREWITH CONSTITUTE A WRITTEN LOAN AGREEMENT WHICH REPRESENTS THE FINAL AGREEMENT OF THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES RELATING TO THIS AGREEMENT.

### NOTICE TO THE BORROWER

DO NOT SIGN THIS AGREEMENT IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE THIS AGREEMENT IS SIGNED.    READ THIS AGREEMENT BEFORE SIGNING IT.

## ACKNOWLEDGMENT

I have received, read and retained a copy of this EquityLine with FlexAbility® Agreement and Disclosure Statement (the "Agreement"), the Security Instrument, the Agreement to Provide Insurance, and the HUD Settlement Statement provided to me at the closing, all of which I agree to by signing this Agreement. The HUD Settlement Statement is incorporated into and made a part of this Agreement. I acknowledge receipt of the EquityLine with FlexAbility® Important Terms disclosure and the home equity brochure when I applied for this Account. In addition, I hereby agree that the terms of this Agreement

Documents Processed 04-02-2007, 19:55:37


EXHIBIT B

replace the terms of any prior oral or written agreements between the Bank and me about this Account, including, for example, any and all commitment letters and pre-approval letters between the Bank and me about this Account.

_____  (Seal)  9-19-07
BORROWER                                            DATE SIGNED
JON C GREAVES

_____  (Seal)  9-19-07
BORROWER                                            DATE SIGNED
TERI A GREAVES

_____  (Seal)  _____
BORROWER                                            DATE SIGNED

_____  (Seal)  _____
BORROWER                                            DATE SIGNED

_____  (Seal)  _____
BORROWER                                            DATE SIGNED

_____  (Seal)  _____
BORROWER                                            DATE SIGNED

_____  (Seal)  _____
BORROWER                                            DATE SIGNED

_____  (Seal)  _____
BORROWER                                            DATE SIGNED

EXHIBIT B

```
DOC # 2007-0294888
05/02/2007 08:00A Fee:24.00
        Page 1 of 6
Recorded in Official Records
    County of Riverside
      Larry W. Ward
Assessor, County Clerk & Recorder
```

*FiD-mcClellan*

Recording requested by:
Wells Fargo Bank, N.A.

When recorded return to:
Wells Fargo Bank, N.A.
Attn: Document Mgt.
P.O. Box 31557
MAC B6955-015
Billings MT 59107-9900

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|----|----|------|-----|------|
| | | | *6* | | *1* | | | | |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | | | | | DO 6 |

State of California
REFERENCE #:        Account number:

*24*

*T
006*

## SHORT FORM DEED OF TRUST
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Short Form Deed of Trust ("Security Instrument") is **APRIL 03, 2007** and the parties are as follows:

   TRUSTOR ("Grantor"):   **JON C. GREAVES AND TERI A. GREAVES, TRUSTEES OF THE GREAVES FAMILY TRUST DATED OCTOBER 3, 2006**

   whose address is: **29638 DEL REY RD, TEMECULA, CALIFORNIA 92591-2860**

   TRUSTEE: **American Securities Company, P.O. Box 31557, Billings, MT 59107**

   BENEFICIARY ("Lender"): **Wells Fargo Bank, N.A., 101 North Phillips Avenue, Sioux Falls, SD 57104**

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, all of that certain real property located in the County of **RIVERSIDE**, State of California, described as follows: The land referred to herein is situated in the State of CA, County of RIVERSIDE, City of TEMECULA and described as follows:Lot 129 of Tract 3929, in the City of Temecula, County of Riverside, State of California, as per map recorded in Book 62, Page 67 to 80, inclusive, of Maps, in the Office of the County Recorder of said County.

   with the address of **29638 DEL REY RD, TEMECULA, CALIFORNIA 92591** and parcel number of **921-130-017-0** together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above.

3. **MAXIMUM OBLIGATION LIMIT AND SECURED DEBT.** The total amount which this Security Instrument will secure shall not exceed **$ 445,900.00** together with all interest thereby accruing, as set forth in the promissory note, revolving line of credit agreement, contract, guaranty or other evidence of debt ("Secured Debt") of even date herewith, and all amendments, extensions, modifications, renewals or other documents which are incorporated by reference into this Security Instrument, now or in the future. The maturity date of the Secured Debt is **APRIL 03, 2047.**

Recording Requested By:
LSI

1/3

Documents Processed 04-02-2007, 19:55:37

EXHIBIT C

4.  **FICTITIOUS DEED OF TRUST.** By the delivery and execution of this Security Instrument, Grantor agrees that all provisions and sections of the Fictitious Deed of Trust, inclusive, dated **February 1, 1997**, and recorded on **February 06, 1997** as Instrument Number **41393** in Book **N/A** at Page **N/A** of the Official Records in the Office of the Recorder of **RIVERSIDE** County, State of California, are hereby incorporated into, and shall govern, this Security Instrument.

5.  **RIDERS.** If checked, the following are applicable to this Security Instrument. The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.

    [X]  Third Party Rider

    [N/A]  Leasehold Rider

    [N/A]  Other:  N/A

**SIGNATURES:** By signing below, Grantor agrees to perform all covenants and duties as set forth in this Security Instrument. Grantor also acknowledges receipt of a copy of this document and a copy of the provisions contained in the previously recorded Fictitious Deed of Trust (the Deed of Trust-Bank/Customer Copy). The undersigned Grantor requests that a copy of ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE hereunder be mailed to the Grantor's address given herein.

Grantor  JON C GREAVES, TRUSTEE OF THE GREAVES FAMILY TRUST        DATED
10/03/2006                                                          Date

Grantor  TERI A GREAVES, TRUSTEE OF THE GREAVES FAMILY TRUST       DATED
10/03/2006                                                          Date

Grantor                                                             Date

Grantor                                                             Date

Grantor                                                             Date

Grantor                                                             Date

Grantor                                                             Date

Grantor                                                             Date

Documents Processed 04-02-2007, 19:55:37

EXHIBIT C

**ACKNOWLEDGEMENT:**
State of California
County of _____**Riverside**_____

On_____**April 19, 2007**_____before me,_____**Gail C. Carey** NOTARY PUBLIC,
(Insert name and title of the officer)
personally appeared__**Teri A. Greaves and Jon C. Greaves**_____,
☐ personally known to me   –OR–   ☒ proved to me on the basis of satisfactory
evidence/ to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.
WITNESS my hand and official seal.


Signature _Gail C. Carey_____     (Seal)

GAIL C. CAREY
Commission # 1514060
Notary Public - California
Riverside County
My Comm. Expires Sep 17, 2008

EXHIBIT C

<div style="border:1px solid">

**GOVERNMENT CODE 27361.7**

</div>

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE
DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:

Name of
The Notary: Gail C. Carey

Commission
Number: 1514060

County Where
Bond is Filed: riverside

Commission
Expires: 9/17/8

Manufacturer or Vendor Number: NNA1
(Located on both sides of the notary seal border)

Date & Place of
Notary Execution: 4/19/7 riverside County, California

Signature: Jen Caster          WELLS FARGO BANK, N.A.

Date & Place of
This Execution: 4/23/7          Maricopa County, Arizona

EXHIBIT C

REFERENCE:
ACCOUNT:

### THIRD PARTY RIDER

This THIRD PARTY RIDER is made on **APRIL 03, 2007**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("the Security Instrument") given by the undersigned Trustee(s) to secure the Secured Debt from

**JON C GREAVES And TERI A GREAVES**

(the "Debtor") to Lender.

With respect to the Trust, this Security Instrument constitutes a third party mortgage/deed of trust and grant of security interest by the undersigned as Trustee(s) of said Trust in the Property described in this Security Instrument to secure the Note of the Debtor to the Lender.

Consequently, references in the text to "Borrower" refer to the undersigned Trustee(s) and the Debtor if the context in which the term is used so requires. Without limiting the generality of the foregoing, the use of the term "Borrower" in the context of warranties, representations and obligations pertaining to the Property shall refer to the undersigned Trustee(s). The use of the term "Borrower" in the context of the requirements under the Note shall refer to the Debtor.

Except with respect to the obligation(s) of the undersigned as individuals, and not as Trustee(s), with respect to the Secured Debt before the date first set forth herein above and the obligation(s) of the undersigned as individuals with respect to Secured Debt prior to the transfer of the Property into the Trust, the Trust and the undersigned, as Trustee(s), are not liable for the debt evidenced by the Note and are a party hereunder except insofar as their interest in the Property is made subject to the Security Instrument.

1/2

Documents Processed 04-02-2007, 19:55:37



Further, revocation of the Trust, distribution of trust assets, or death of any Debtor shall constitute an event of default under the Secured Instrument.

Trustee JON C GREAVES, TRUSTEE OF THE GREAVES FAMILY TRUST       9-19-07
DATED 10/03/2006                                                  Date

Trustee TERI A GREAVES, TRUSTEE OF THE GREAVES FAMILY TRUST      4/18/07
DATED 10/03/2006                                                 Date

Trustee _____         _____
                                                                Date

Trustee _____         _____
                                                                Date

Trustee _____         _____
                                                                Date

Trustee _____         _____
                                                                Date

Trustee _____         _____
                                                                Date

Trustee _____         _____
                                                                Date

Documents Processed 04-02-2007, 19:55:37



**Fill in this information to identify your case and this filing:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Theresa Greaves** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA

Case number

☐ Check if this is an amended filing

# Official Form 106A/B
## Schedule A/B: Property                                12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.

☑ Yes. Where is the property?

| 1.1 | | | |
|---|---|---|---|
| **29638 Del Rey Road** | | | |
| Street address, if available, or other description | | | |

**What is the property?** Check all that apply

☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| **Temecula** | **CA** | **92591-0000** |
|---|---|---|
| City | State | ZIP Code |

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$574,612.00** | **$574,612.00** |

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another

**Riverside**
County

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Property scheduled for foreclosure on September 19.**

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

EXHIBIT D

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Theresa Greaves** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | | | ☐ Check if this is an |
| (if known) | | | amended filing |

Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. Do any creditors have claims secured by your property?

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:   List All Secured Claims**

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the<br>value of collateral. | Column B<br>Value of collateral<br>that supports this<br>claim | Column C<br>Unsecured<br>portion<br>if any |
|---|---|---|---|---|
| 2.1 **Carmax Auto Finance**<br>Creditor's Name | Describe the property that secures the claim:<br>**2006 Volkswagen Bettle**<br>**84,000 miles** | $8,523.00 | $4,000.00 | $4,523.00 |
| | **\* Car surrendered on 8/16**<br>As of the date you file, the claim is: Check all that apply | | | |
| **P.O. Box 440609**<br>**Kennesaw, GA 30160**<br>Number, Street, City, State & Zip Code | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | | |
| **Who owes the debt?** Check one. | **Nature of lien.** Check all that apply. | | | |
| ■ Debtor 1 only | ☐ An agreement you made (such as mortgage or secured<br>car loan) | | | |
| ☐ Debtor 2 only | | | | |
| ☐ Debtor 1 and Debtor 2 only | ☐ Statutory lien (such as tax lien, mechanic's lien) | | | |
| ☐ At least one of the debtors and another | ☐ Judgment lien from a lawsuit | | | |
| ☐ Check if this claim relates to a<br>community debt | ■ Other (including a right to offset)   Auto Loan | | | |
| Date debt was incurred  9/2013 | Last 4 digits of account number    1627 | | | |
| 2.2 **Meadow View HOA**<br>Creditor's Name | Describe the property that secures the claim:<br>**29638 Del Rey Road Temecula, CA**<br>**92591  Riverside County**<br>**Property scheduled for foreclosure**<br>**on September 19.** | $675.00 | $574,612.00 | $675.00 |
| | As of the date you file, the claim is: Check all that apply. | | | |
| **41050 Avenida Verded**<br>**Temecula, CA 92591**<br>Number, Street, City, State & Zip Code | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | | |
| **Who owes the debt?** Check one. | **Nature of lien.** Check all that apply. | | | |
| ■ Debtor 1 only | ☐ An agreement you made (such as mortgage or secured<br>car loan) | | | |
| ☐ Debtor 2 only | | | | |
| ☐ Debtor 1 and Debtor 2 only | ☐ Statutory lien (such as tax lien, mechanic's lien) | | | |
| ☐ At least one of the debtors and another | ☐ Judgment lien from a lawsuit | | | |
| ☐ Check if this claim relates to a<br>community debt | ■ Other (including a right to offset)   HOA Dues | | | |

Official Form 106D              Schedule D: Creditors Who Have Claims Secured by Property                    page 1 of 2

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                       Best Case Bankruptcy



Debtor 1    **Theresa Greaves**
　　　　　First Name　　　　　Middle Name　　　　　Last Name

Case number (if know) _____

**Date debt was incurred**　　　　　**Last 4 digits of account number**

---

2.3　**Wells Fargo Home Mortgage**
　　　Creditor's Name

**Describe the property that secures the claim:**
29638 Del Rey Road Temecula, CA 92591  Riverside County
Property scheduled for foreclosure on September 19.

$232,423.83　　$574,612.00　　$0.00

P.O. Box 10335
Des Moines, IA 50306
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

**Date debt was incurred**  10/2010　　**Last 4 digits of account number**  1291

---

2.4　**Wells Fargo Home Mortgage**
　　　Creditor's Name

**Describe the property that secures the claim:**
29638 Del Rey Road Temecula, CA 92591  Riverside County
Property scheduled for foreclosure on September 19.

$452,961.05　　$574,612.00　　$110,772.88

P.O. Box 10335
Des Moines, IA 50306
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another
☑ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)   **Equity Line of Credit**

**Date debt was incurred**  2000　　**Last 4 digits of account number**  8238

---

Add the dollar value of your entries in Column A on this page. Write that number here:　$694,582.88

If this is the last page of your form, add the dollar value totals from all pages. Write that number here:　$694,582.88

**Part 2:**　List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com
Best Case Bankruptcy

EXHIBIT E

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Theresa Greaves** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | | | |
| (if known) | | | |

☐ Check if this is an amended filing

## Official Form 108
# Statement of Intention for Individuals Filing Under Chapter 7      12/15

If you are an individual filing under chapter 7, you must fill out this form if:
- ■ creditors have claims secured by your property, or
- ■ you have leased personal property and the lease has not expired.

You must file this form with the court within 30 days after you file your bankruptcy petition or by the date set for the meeting of creditors, whichever is earlier, unless the court extends the time for cause. You must also send copies to the creditors and lessors you list on the form

If two married people are filing together in a joint case, both are equally responsible for supplying correct information. Both debtors must sign and date the form.

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known).

**Part 1:    List Your Creditors Who Have Secured Claims**

1. For any creditors that you listed in Part 1 of Schedule D: Creditors Who Have Claims Secured by Property (Official Form 106D), fill in the information below.

| Identify the creditor and the property that is collateral | What do you intend to do with the property that secures a debt? | Did you claim the property as exempt on Schedule C? |
|---|---|---|
| Creditor's name: **Meadow View HOA**<br><br>Description of property securing debt: **29638 Del Rey Road Temecula, CA 92591  Riverside County Property scheduled for foreclosure on September 19.** | ■ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement.*<br>☐ Retain the property and [explain]: | ■ No<br><br>☐ Yes |
| Creditor's name: **Wells Fargo Home Mortgage**<br><br>Description of property securing debt: **29638 Del Rey Road Temecula, CA 92591  Riverside County Property scheduled for foreclosure on September 19.** | ■ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement.*<br>☐ Retain the property and [explain]: | ■ No<br><br>☐ Yes |
| Creditor's name: **Wells Fargo Home Mortgage**<br><br>Description of **29638 Del Rey Road Temecula,** | ■ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement.* | ■ No<br><br>☐ Yes |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                Best Case Bankruptcy

EXHIBIT F

Debtor 1    **Theresa Greaves**                                    Case number (if known)

property      **CA 92591  Riverside County**          ☐ Retain the property and [explain]:
securing debt:  **Property scheduled for**
                **foreclosure on September 19.**

**Part 2:**   List Your Unexpired Personal Property Leases

For any unexpired personal property lease that you listed in Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G), fill
in the information below. Do not list real estate leases. Unexpired leases are leases that are still in effect; the lease period has not yet ended.
You may assume an unexpired personal property lease if the trustee does not assume it. 11 U.S.C. § 365(p)(2).

**Describe your unexpired personal property leases**                          **Will the lease be assumed?**

Lessor's name:                                                          ☐ No
Description of leased
Property:                                                              ☐ Yes

Lessor's name:                                                          ☐ No
Description of leased
Property:                                                              ☐ Yes

Lessor's name:                                                          ☐ No
Description of leased
Property:                                                              ☐ Yes

Lessor's name:                                                          ☐ No
Description of leased
Property:                                                              ☐ Yes

Lessor's name:                                                          ☐ No
Description of leased
Property:                                                              ☐ Yes

Lessor's name:                                                          ☐ No
Description of leased
Property:                                                              ☐ Yes

Lessor's name:                                                          ☐ No
Description of leased
Property:                                                              ☐ Yes

**Part 3:**   Sign Below

Under penalty of perjury, I declare that I have indicated my intention about any property of my estate that secures a debt and any personal
property that is subject to an unexpired lease.

X                                X
  Theresa Greaves                                       Signature of Debtor 2
  Signature of Debtor 1

Date    September   7, 2016                              Date

Official Form 108        Statement of Intention for Individuals Filing Under Chapter 7        page 2

